JUSTIN D. WHATCOTT, ID STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
**ELLIOT B. WERTHEIM, NY STATE BAR NO. 5312509**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:   (208) 334-9375
Email: Elliot.Wertheim@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>JANNA MILLER; INCLUSION, INC.;<br>INCLUSION NORTH, INC.; and<br>INCLUSION ADMINISTRATIVE<br>SERVICES, INC.<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT** |

The United States of America (United States) brings this Complaint against Janna Miller

(Miller), Inclusion, Inc. (Inclusion), Inclusion North, Inc. (North), and Inclusion Administrative

Services, Inc. (Admin) (collectively, referred to herein as "Defendants"), and alleges as follows:

**INTRODUCTION**

1.      The United States brings this action against Defendants to recover treble damages

and civil penalties under the False Claims Act (FCA), 31 U.S.C. §§ 3729, *et seq.*; civil penalties

under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12

U.S.C. § 1833a; one and a half times damages under 15 U.S.C. § 636(b)(16)(E)(ii); restitution

**COMPLAINT - 1**

and other relief under a breach of contract theory; and damages and other monetary relief under the common law and equitable theories of fraud, unjust enrichment, and payment by mistake.

2.      This action arises from false or fraudulent claims that Defendants knowingly presented, or caused to be presented to, to the United States Small Business Administration (SBA) and lenders acting with delegated authority to make and approve PPP loans without prior SBA review, in violation of the FCA, FIRREA, and common law. Defendants Miller, Inclusion, and North also presented, or caused to be presented, false or fraudulent claims to the United States and the State of Idaho through the Idaho Medicaid program, in violation of the FCA and common law. Defendants also knowingly made, used, or caused to be made or used, false records and statements material to these false or fraudulent claims.

3.      As a result, Defendants fraudulently obtained over $3 million dollars in Paycheck Protection Program (PPP) loans and the subsequent forgiveness of those loans by the SBA. Additionally, as result of false or fraudulent claims and/or false records and statements underlying false claims, Defendants Miller and Admin obtained an Economic Injury Disaster Loan (EIDL) in the amount of $500,000.

4.      Specifically, to fraudulently obtain PPP loans in or about April 2020 and February 2021, Defendants Miller, Inclusion, and North represented that they were not engaged in illegal activity when in fact they were contemporaneously and knowingly defrauding the Medicaid Program.

5.      Defendants Miller, Inclusion, and North knew this representation to be false because Miller, the owner and operator of Defendants Inclusion and North, was contemporaneously using Inclusion and North to submit fraudulent Medicaid claims.

**COMPLAINT - 2**

6.     Indeed, Miller pled guilty in the Fourth Judicial District of the State of Idaho, in and for the County of Ada, to the felony of Provider Fraud, admitting that she knowingly defrauded Medicaid from January 1, 2018, to March 21, 2021, in violation of Idaho Code § 56-227A. In a plea agreement, Miller admitted to defrauding the Medicaid Program by submitting claims for specified clients. Upon information and belief, Inclusion and North provided services to the specified clients.

7.     The false Medicaid claims included claims for services that were not rendered. Had the Medicaid Program known that the services were not rendered, it would not have reimbursed Inclusion or North.

8.     Additionally, to fraudulently obtain PPP loans – and forgiveness for those loans, Defendants falsely represented they would use PPP funds – or already had used those funds – for eligible purposes, such as payroll and utilities. In fact, Defendants intended to use – and in fact used – PPP funds for a variety of ineligible purposes including, but not limited to, personal expenses for Miller's children, a Peloton, home furnishings, and a vacation rental in Hawaii.

9.     Defendants Miller and Admin also knowingly presented or caused to be presented false or fraudulent claims to the SBA to obtain an Economic Injury Disaster Loan (EIDL) in the amount of $500,000.

10.     Specifically, Defendants Miller and Admin falsely represented in their EIDL application that Admin would use all EIDL funds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic. This representation was false because Defendants Miller and Admin intended to use – and in fact used – EIDL funds for a variety of ineligible, non-working capital purposes including, but not limited to, the purchase of real estate for Miller's adult child.

**COMPLAINT - 3**

11.     Defendants' false representations were material to their receipt of PPP and EIDL funds. Had the SBA known that Defendants were engaged in illegal activity (i.e., Medicaid fraud), it would not have guaranteed the PPP loans – and no loans would have issued. Had the SBA known that Defendants were engaged in illegal activity, it would not have remitted forgiveness on the PPP loans.

12.     Similarly, had the SBA known that the Defendants did not intend to use the PPP loan funds for eligible purposes, it would not have guaranteed the PPP loans – and no loans would have issued. Had the SBA known that the Defendants did not use the PPP funds for eligible purposes, it would not have remitted forgiveness on the PPP loans.

13.     Defendants' false representations were similarly material to their receipt of EIDL funds. Had the SBA known that the Defendants did not intend to use the EIDL funds for eligible purposes, it would have not issued a loan.

**PARTIES**

14.     Plaintiff United States of America, acting through the SBA, administered the PPP program.

15.     Plaintiff United States of America, acting through the United States Department of Health and Human Services (HHS) and its agency Centers for Medicare and Medicaid Services (CMS), as well as the State of Idaho, administered the Medicaid program.

16.     At all times relevant to this Complaint, Defendant Janna Miller resided in Idaho. Miller was the president and an owner of Defendants Inclusion, North, and Admin.

17.     Defendant Inclusion was, at all times relevant to this Complaint, a general business corporation registered in the State of Idaho.

18.     Defendant North was, at all times relevant to this Complaint, a general business corporation registered in the State of Idaho.

19.     Defendant Admin was, at all times relevant to this Complaint, a general business corporation registered in the State of Idaho.

## JURIDICTION AND VENUE

20.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345, and 31 U.S.C. §§ 3729, 3730(a), and 3732.

21.     This Court has supplemental jurisdiction to entertain federal common law and equitable causes of action pursuant to 28 U.S.C. § 1367(a).

22.     This Court has personal jurisdiction over Defendant Janna Miller pursuant to 31 U.S.C. § 3732(a), and because she resides in this District.

23.     This Court has personal jurisdiction over Defendants Inclusion, North, and Admin because they transacted business in the District of Idaho and engaged in wrongdoing in the District of Idaho.

24.     Venue is proper in the District of Idaho because (a) Defendants reside and conduct business within the District; (b) a substantial portion of the events giving rise to the action occurred in the District; and (c) the civil penalties sought by the United States accrued in the District. *See* 28 U.S.C. §§ 1391(b) and 1395(a); 31 U.S.C. § 3732.

25.     Pursuant to District of Idaho Local Civil Rule 3.1, venue is proper in the District's Southern Division.

**COMPLAINT - 5**

## BACKGROUND

### The False Claims Act

26.     The FCA is the United States' primary civil litigation tool against fraud perpetrated by those who wrongfully obtain monies from federally funded programs. Consistent with the congressional purpose underlying the FCA, the Supreme Court has noted that the FCA must be interpreted broadly so as to apply to all those who receive government monies to which they are not entitled. *See United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

27.     The FCA provides that a person is liable to the United States Government for three times the amount of damages the Government sustains because of the acts of that person, plus a civil penalty, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

28.     The FCA also provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the acts of that person, plus a civil penalty, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

29.     The FCA defines "knowing" and "knowingly" as having actual knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard for, the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). The FCA does not require proof of specific intent to defraud. *Id*.

### The Paycheck Protection Program

30.     On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (Pub. L. 116-136). Through the CARES Act, Congress authorized

emergency financial assistance to businesses suffering economic consequences from the COVID-19 pandemic. Among other things, Congress established the Paycheck Protection Program (PPP), under which eligible small businesses could obtain an SBA guaranteed loan. Businesses were required to spend the loan proceeds on employee compensation, rent, and other specified expenses. Depending on their use of the loan proceeds, eligible businesses could qualify for forgiveness of up to the full amount of the loan.

31.     The SBA delegated authority to third-party lenders to underwrite and approve PPP loans. In order to obtain a PPP loan, a borrower (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform.

32.     The PPP loan application (SBA Form 2483) required the borrower (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative representations, authorizations, and certifications in order to be eligible to obtain the PPP loan. If an applicant falsely certified, or failed to certify, a representation contained in the application, the applicant would be ineligible to receive a PPP loan.

33.     One of the required representations from the applicant was an affirmative statement that they were not engaged in any activity that is illegal under federal, state, or local law. Loan applicants engaged in illegal activity were not eligible to receive PPP loans.

34.     Another one of the required representations was that the applicant would use loan proceeds for business related purposes as specified in the loan application, namely, the retention of workers and maintenance of payroll. Moreover, the applicant certified their understanding that not more than forty (40) percent of any forgiven loan amount could be used for non-payroll costs.

**COMPLAINT - 7**

35.     The applicant also certified their understanding that if the funds were knowingly used for unauthorized purposes, the federal government may find the applicant legally liable, such as for charges of fraud; that the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects; and that the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law.

36.     Once a borrower submitted its PPP loan application (SBA Form 2483) to a participating lender, the lender processed the PPP loan application.

37.     Prior to closing an approved PPP loan, the lender had to submit a Lender's Application – Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA wherein the lender applied for a guarantee on the loan. Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483) regarding its eligibility, the PPP borrower's false certification would cause the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484).

38.     If the lender approved the PPP loan application (SBA Form 2483) and the SBA approved the (SBA Form 2484), the lender funded the PPP loan using its own monies.

39.     Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount, as well as any interest, of qualifying loans guaranteed under the PPP.

40.     When the SBA authorizes forgiveness of a loan, it uses federal funds to pay off the lender.

41.     In order to receive forgiveness, the applicant submitted a forgiveness application. (SBA Form 3508).

**COMPLAINT - 8**

42.    The applicant made a number of representations in the forgiveness application, including, but not limited to, some version of the following:

a.    The loan proceeds were used to pay business costs that are eligible for forgiveness: (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);

b.    I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges;

c.    The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law. . .; and

d.    The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

43.    Eligible borrowers were allowed to submit an application for a second PPP loan. This second loan is known as a Second Draw loan, while the first PPP loan received by the borrower is known as a First Draw loan.

<u>The Economic Injury Disaster Loan Program</u>

44.    The Economic Injury Disaster Loan (EIDL) program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

45.    In order to obtain an EIDL, a qualifying small business had to submit an application to the SBA and provide information about its operations for the 12-month period preceding the disaster, which for COVID-19 relief, was the 12-month period from January 31,

2019, to January 31, 2020. The applicant also had to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

46.     EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant. After the application was approved, borrowers were required to sign a Loan Authorization and Agreement (LAA) prior to the disbursement of any funds, which required the borrower to agree to use the loan proceeds solely as working capital to alleviate economic injury caused by the Covid-19 disaster. Any funds issued under an EIDL were issued directly by the SBA; unlike a PPP loan, the SBA did not purchase a guaranty from a lender. Also unlike PPP loans, funds issued under an EIDL were not eligible for forgiveness.

47.     As part of the LAA, the borrower also typically certified that none of the loan's proceeds would be used primarily for personal, family, or household purposes and that the borrower read and understood the meaning and effect of all terms of the LAA.

Financial Institutions Reform, Recovery, and Enforcement Act of 1989

48.     FIRREA provided that any person who violates, or who conspires to violate, enumerated statutes—including 15 U.S.C. § 645(a)—is liable for a civil penalty of up to $1 million per violation. 12 U.S.C. § 1833a(b)(1). For civil penalties assessed after February 12, 2024, whose associated violations occurred after November 2, 2015, the maximum civil penalty has been adjusted to $2,449,575 per violation. 28 C.F.R. § 85.5.

49.     Under 15 U.S.C. § 645(a),

[w]hoever makes any statement knowing it to be false . . . for the purpose of obtaining for himself or for any applicant any loan . . . or for the purpose of influencing in any way the action of the [SBA], or for the purpose of obtaining money, property, or anything of value, under this chapter, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.

**COMPLAINT - 10**

15 U.S.C. § 645(a).  Materiality is not an element of 15 U.S.C. § 645(a). *See United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998).

50.     The predicate violations that can form the basis for liability under FIRREA also include: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); and (b) making a false statement on a loan application to a financial institution where "the accounts of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 1014.

51.     Section 1109(i) of the CARES Act provides that PPP loans are SBA loans for purposes of 15 U.S.C. § 645. Accordingly, section 645(a) extends to false statements concerning a business' eligibility to receive PPP loans. *See United States v. Brooks*, No. 1:22cv0101, 2022 U.S. Dist. LEXIS 99129, at *20 (E.D. Va. Apr. 15, 2022) (Defendant's false statements about eligibility violated section 645(a) because they were "knowingly made for the purpose of obtaining a loan or influencing the SBA to forgive two of defendant's loans."), report and recommendation adopted, 2022 U.S. Dist. LEXIS 98894, (E.D. Va. June 1, 2022).

<u>Medicaid Program Requirements</u>

52.     Title XIX of the Social Security Act, enacted in 1965, established Medicaid as a joint federal-state program that provides healthcare benefits for certain groups, primarily the poor and disabled.

53.      The Idaho Medicaid program is a state-administered health insurance program that is predominantly funded by the United States Department of Health and Human Services (HHS), through its agency Centers for Medicare and Medicaid Services (CMS). The State of Idaho funds the balance of the Idaho Medicaid program. This program helps pay for reasonable

and necessary medical procedures and services to individuals deemed eligible under federal and state low-income programs.

54.     The Idaho Department of Health and Welfare (IDHW) oversees the processing and payment of claims that providers such as Defendants submit for reimbursement.

55.     To make a claim for reimbursement, a healthcare provider must submit a claim to IDHW.

## STATEMENT OF FACTS

### Defendant Miller's Medicaid Fraud Felony Conviction

56.     On February 8, 2022, Miller pleaded guilty in the Fourth Judicial District of the State of Idaho, in and for the County of Ada, to Provider Fraud in violation of Idaho Code § 56-227(A), which is a felony in the State of Idaho. A copy of Miller's plea agreement is attached hereto as **Exhibit A**.

57.     On August 25, 2022, District Judge Samuel Hoagland sentenced Miller to 180 days of incarceration, restitution of $82,607.12, and court costs and fines.

58.     Miller admitted in the plea agreement that between January 1, 2018, and March 21, 2021, she:

> **knowingly and with the intent to defraud**, by means of willfully false statement or representation, or by deliberate concealment of any material fact, or any other fraudulent scheme or device, present[ed] or caused to be presented for allowance or payment any false or fraudulent claim for furnishing personal care services on behalf of an Idaho Medicaid participant or, obtain[ed] or attempt[ed] to obtain compensation from public funds greater than that to which she is legally entitled for services purported to have been performed on behalf of an Idaho Medicaid participant.

Exhibit A at 5 **(emphasis added).**

**COMPLAINT - 12**

59.    Miller acknowledged that if the case against her "were to proceed to trial, the

State of Idaho and [Miller] agree that the **following facts would be established by the evidence**

**beyond a reasonable doubt**:" *Id.* **(emphasis added).**

> **From January 1, 2018 through March 21, 2021**, that [Miller] executed a scheme
> to wrongfully obtain funds or property under the stewardship and control of the
> Idaho Medicaid program of approximately $146,495.02, either by making false
> representations or directing billing personnel to make false representations
> regarding services provided to Idaho Medicaid participants, or by submitting
> multiple false and fictitious claims for services that were either not provided or
> were not provided in an amount or duration billed in the Idaho Medicaid billing
> transmittals submitted to the fiscal agent of the Idaho Department of Health and
> Welfare.

Exhibit A at 6-7 **(emphasis added).**

> **[Miller] knew these statements were false and acted with the intent to defraud
> the Idaho Medicaid Program because she knew that Inclusion had not
> provided the services billed for** in the duration and amount billed in the claims
> submissions transmittals submitted to the Idaho Medicaid program or its fiscal
> agent.

Exhibit A at 7 **(emphasis added).**

60.    The fraud Miller pleaded guilty to included submitting Medicaid claims for: (a)

services that were not provided; and (b) services that were not provided in the quantity claimed.

For example, Miller submitted claims on Medicaid participants who were incarcerated,

hospitalized, or otherwise unavailable to receive services. In connection with Miller state court

criminal case, the Idaho Medicaid Fraud Control Unit (MFCU) compiled the below summary

table of a sample of Inclusion's claims. Miller admitted the accuracy of the table as part of her

plea agreement.

**COMPLAINT - 13**

| Client | Client ID Number | Total Number of Inappropriate Claims | Total Inappropriately Submitted Amount | Total Currently Owed |
|--------|------------------|--------------------------------------|----------------------------------------|----------------------|
| M--- N----- | 1649956 | 333 | $ 21,185.75 | $ 4,889.25 |
| A---- L--- | 20289 | 9 | $ 4,587.84 | $ 2,039.04 |
| B------- D------ | 379930 | 43 | $ 5,097.60 | $ 637.20 |
| J----- F---------- | 1302396 | 222 | $ 28,737.47 | $ 26,618.78 |
| J----- M------ | 550388 | 602 | $ 31,849.89 | $ 19,855.20 |
| K------- B------- | 439400 | 9 | $ 4,587.84 | $ 1,019.52 |
| T----- B----- | 1113629 | 141 | $ 18,014.13 | $ 7,214.88 |
| B---- L------- | 8957 | 60 | $ 1,050.00 | $ 5.25 |
| D---- W-------- | 266534 | 196 | $ 31,384.50 | $ 20,328.00 |
|  |  |  |  |  |
| Grand Total |  | 1615 | $ 146,495.02 | $ 82,607.12 |

Exhibit A at 6.

61.     The redacted names in the chart above represent clients of Inclusion and North for whom Miller, Inclusion, and North submitted fraudulent Medicaid claims for reimbursement.

<u>Medicaid Fraud</u>

62.     Defendants Inclusion and North executed Provider Agreements with IDHW to provide residential habilitation, home health, and other social support services to Idaho Medicaid participants. These agreements bound Defendants to submit claims only for medically necessary services that were actually provided.

63.     Defendant Miller also "executed an Electronic Claims Submission Certification and Authorization with the fiscal claims agent of IDHW in order to electronically submit claims for services provided to Idaho Medicaid participants. In this authorization, Miller acknowledged that any "false claims, statements, or documents, or concealment of material facts could be subject to prosecution under Federal and State law." *See* Exhibit A at 6.

**COMPLAINT - 14**

64.     Nevertheless, Defendants submitted Medicaid claims for services that were not provided and/or not provided in the quantity claimed.

65.     Defendants created false progress notes and/or billing logs to support these false Medicaid claims.

66.     In total, Defendants failed to provide services as claimed on at least 43 separate Medicaid claims. As a result of these false Medicaid claims, Defendants received no less than $146,495.02 in Medicaid funds from IDHW that they were not entitled to receive.

67.     IDHW would not have paid these Medicaid claims had it known the truth, *i.e.*, that Defendants did not provide services as claimed.

PPP Loan Fraud: False Certification of No Illegal Activity for Loan 7607477102

68.     On April 7, 2020, Miller submitted a PPP loan application for loan number 7607477102 on behalf of Inclusion. Miller signed the application as the president of Inclusion. She indicated in the application that she was an owner of Inclusion. Excerpts from the First Draw PPP Application for Inclusion, loan 7607477102, are attached hereto as **Exhibit B**.

69.     In loan application 7607477102, Inclusion, through Miller, affirmatively certified that the "Applicant is not engaged in any activity that is illegal under federal, state or local law." Exhibit B at 3.

70.     Miller and Inclusion also certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects." *Id*.  Miller and Inclusion further certified that they understood that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law . . . ." *Id*.

**COMPLAINT - 15**

71.     Miller and Inclusion's statements were false. The information provided in the loan application was not "true and accurate" – Miller and Inclusion were knowingly engaged in illegal activity at the time of the application via commission of the felony of Provider Fraud. The admitted facts underlying Miller's conviction for Provider Fraud establish that Miller and Inclusion were engaged in activity that was illegal under both state law, (i.e., Provider Fraud under Idaho Code § 56-227(A), as well as federal law (i.e., the FCA under 31 U.S.C. § 3729 and health care fraud, 18 U.S.C. § 1347)).

72.     Inclusion received $735,000 in PPP funds for loan number 7607477102 on April 21, 2020. SBA authorized forgiveness for the loan in the principal amount of $735,000 and $4,631.51 in interest on December 7, 2020. SBA paid the lender of this loan, Glacier Bank, the principal, interest, and $22,050 in lender's fees in connection with this loan for a total of $761,681.51.

PPP Loan Fraud: False Certification of No Illegal Activity for Loan 4512548502

73.     On January 27, 2021, Miller submitted a PPP loan application for loan number 4512548502 on behalf of Inclusion. Miller signed the application as the president of Inclusion and indicated that she was an owner of the company. Excerpts from the Second Draw PPP Application for Inclusion, loan 4512548502, are attached hereto as **Exhibit C.**

74.     In loan application 4512548502, Inclusion, through Miller, certified that the "Applicant is not engaged in any activity that is illegal under federal, state or local law." Exhibit C at 3.

75.     Miller and Inclusion also certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects." *Id* at 4. Miller and Inclusion further certified that they

understood that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law. . ." *Id.*

76.    Miller and Inclusion's statements were false. The information provided in the loan application was not "true and accurate" – Miller and Inclusion knowingly engaged in illegal activity at the time of the application via commission of the felony of Provider Fraud. The admitted facts underlying Miller's conviction for Provider Fraud establish that Miller and Inclusion were engaged in activity that was illegal under both state law, (i.e., Provider Fraud under Idaho Code § 56-227(A), as well as federal law (i.e., the FCA under 31 U.S.C. § 3729 and health care fraud, 18 U.S.C. § 1347)).

77.    Inclusion received $618,011.80 in PPP funds for loan number 4512548502 on March 2, 2021. SBA paid the lender, Glacier Bank, $18,540.35 in fees in connection with this loan including $10,667.05 in interest. SBA initially denied Miller's application for loan forgiveness. Miller appealed the denial of forgiveness. On December 19, 2022, the SBA placed the forgiveness decision on hold, pending the outcome of the investigation underlying the instant complaint. SBA subsequently purchased the loan guaranty and paid Glacier Bank the sum of the loan principal and interest.

<u>PPP Loan Fraud: False Certification of No Illegal Activity for Loan 7620877109</u>

78.    On April 7, 2020, Janna Miller submitted a PPP loan application for loan number 7620877109 on behalf of North. Miller signed the application as the president of North. She indicated that she was an owner of the company. Excerpts from the First Draw PPP Application for North, loan 7620877109, are attached hereto as **Exhibit D**.

**COMPLAINT - 17**

79.     In loan application 7620877109 North, through Miller, affirmatively certified that the "Applicant is not engaged in any activity that is illegal under federal, state or local law." Exhibit D at 3.

80.     Miller and North also certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects." *Id*. Miller and North further certified that they understood that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law. . ." *Id.*

81.     Miller and North's statements were false. The information provided in the loan application was not "true and accurate" – Miller and North knowingly engaged in illegal activity at the time of the application via commission of the felony of Provider Fraud. The admitted facts underlying Miller's conviction for Provider Fraud establish that Miller and Inclusion were engaged in activity that was illegal under both state law, (i.e., Provider Fraud under Idaho Code § 56-227(A), as well as federal law (i.e., the FCA under 31 U.S.C. § 3729 and health care fraud, 18 U.S.C. § 1347)).

82.     North received $382,500 in PPP funds for loan number 7620877109 on April 21, 2020. SBA authorized forgiveness for the loan in the principal amount of $382,500 and $2,064.45 in interest on December 7, 2020. SBA paid the lender, Glacier Bank, the principal, interest, and $11,475 in fees in connection with this loan for a total of $396,039.45.

<u>PPP Loan Fraud: False Statement of No Illegal Activity for Loan 7583328300</u>

83.     On January 27, 2021, Janna Miller submitted a PPP loan application for loan number 7583328300 on behalf of North. Miller signed the application as the president of North.

**COMPLAINT - 18**

She indicated that she was an owner of the company.  Excerpts from the North Second Draw

PPP Application, loan 7583328300, are attached hereto as **Exhibit E**.

84.    In loan application 7583328300 North, through Miller, affirmatively certified that

the "Applicant is not engaged in any activity that is illegal under federal, state or local law."

Exhibit E at 3.

85.    Miller and North also certified "that the information provided in this application

and the information provided in all supporting documents and forms is true and accurate in all

material respects." Exhibit E at 4. Miller and North further certified that they understood that

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under

the law. . ." *Id.*

86.    Miller and North's statements were false. The information provided in the loan

application was not "true and accurate" – Miller and North knowingly engaged in illegal activity

at the time of the application via commission of the felony of Provider Fraud. The admitted facts

underlying Miller's conviction for Provider Fraud establish that Miller and Inclusion were

engaged in activity that was illegal under both state law, (i.e., Provider Fraud under Idaho Code §

56-227(A), as well as federal law (i.e., the FCA under 31 U.S.C. § 3729 and health care fraud, 18

U.S.C. § 1347)).

87.    North received $370,656.77 in PPP funds for loan number 7583328300 on

February 4, 2021. SBA denied forgiveness for the $370,656.77 and an appeal followed that is

pending the outcome of the investigation underlying the instant complaint. No interest rate

calculation has been made to date. SBA paid the lender, Glacier Bank, $11,119.70 in fees in

connection with this loan for a total of $381,776.47.

**COMPLAINT - 19**

<u>PPP Fraud: Misuse of Funds for Loans 8555407105 and 7607477102</u>

88.     On April 7, 2020, Miller submitted PPP loan applications on behalf of Admin (Loan 8555407105) and Inclusion (Loan 7607477102). Miller signed both applications as the president and owner the companies. Excerpts from the First Draw PPP Application for Admin, loan 8555407105, are attached hereto as **Exhibit F.** Exhibit B contains Excerpts from the First Draw PPP Application for Inclusion.

89.     In both applications Inclusion and Admin, through Miller, affirmatively certified that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." Exhibits B and F at 3. Inclusion and Admin, through Miller, also certified that the "funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." *Id.* Inclusion and Admin, through Miller, further certified that they understood "that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as charges for fraud." *Id.*

90.     On September 15, 2020, Miller submitted forgiveness applications on behalf of Admin (Loan 8555407105) and Inclusion (Loan 7607477102). Excerpts from the forgiveness application for the First Draw PPP Application for Admin, loan 8555407105, are attached hereto as **Exhibit G**. Excerpts from the forgiveness application for the First Draw PPP Application for Inclusion, loan 7607477102, are attached hereto as **Exhibit H**. Admin and Inclusion, through Miller, affirmatively certified that "the dollar amount for which forgiveness is requested . . . was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business

**COMPLAINT - 20**

mortgage interest payments; business rent or lease payments; or business utility payments)."
Exhibits G and H at 3.

91.    Miller, Admin, and Inclusion also certified that they understood that "if the funds
were knowingly used for unauthorized purposes, the federal government may pursue recovery of
loan amounts and/or civil or criminal fraud charges." *Id*.

92.    Miller, Admin, and Inclusion also certified that they had "accurately verified the
payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting
forgiveness." *Id.*

93.    Miller and Admin also certified that "the information provided in this application
and the information provided in all supporting documents and forms is true and correct in all
material respects. [They] underst[ood] that knowingly making a false statement to obtain
forgiveness of an SBA-guaranteed loan is punishable under the law . . . ." *Id.*

94.    Miller, Inclusion, and Admin's statements regarding the intended and actual use
of the PPP loan funds were false. When they submitted their PPP applications, they did not
intend to use the loan proceeds for eligible purposes. Nor did they do so. Instead, they used the
proceeds for a variety of non-eligible purposes, including, but not limited to, distributions to
Miller's personal accounts, which were subsequently transferred to Miller's adult children or
used for various personal expenditures.

95.    Inclusion and Admin received, collectively, $1,422,500 between April 21, 2020,
and April 22, 2020. At least the following misuse of these funds occurred over the ensuing days:

a.    On April 21, 2020, Inclusion transferred $20,000 to Janna Miller's personal
checking account;

b.    On April 22, 2020, Admin sent $50,000 to Miller's personal checking account;

c.  On April 23, 2020, Inclusion transferred another $12,000 to Miller's household account followed by another $15,000 to Miller's personal checking account;

d.  On April 24, 2020, Miller, on behalf of Inclusion, made two payments to an American Express account, totaling $20,587.51;

e.  On April 21, 2020, Miller transferred $2,000 to her adult daughter, Kylie Miller;

f.  On April 22, 2020 Miller transferred $3,000 to her adult son, Parker Miller;

g.  On April 24, 2020 Miller paid $5,570 to a Wells Fargo Financial account;

h.  On April 24, 2020 Miller paid $7,541 to RC Willey, a home furnishing company;

i.  On April 24, 2020 Miller paid $10,000 to a Wells Fargo Consumer account; and

j.  On April 24, 2020, Miller paid $12,133.96 on Pan American Life Insurance.

96.  Admin received $687,500 in loan funds for loan number 8555407105 on April 22, 2020. SBA authorized forgiveness for the loan in the amount of $687,500 in principal and $5,669.52 in interest on February 28, 2021. SBA paid the lender, Glacier Bank, the principal, interest, and $20,625 in fees in connection with this loan for a total of $713,794.52.

97.  Inclusion received $735,000 in loan funds for loan number 7607477102 on April 21, 2020. SBA authorized forgiveness for the loan in the principal amount of $735,000 and $4,631.51 in interest on December 7, 2020. SBA paid the lender of this loan, Glacier Bank, the principal, interest, and $22,050 in lender's fees in connection with this loan for a total of $761,681.51.

### PPP Fraud – Misuse of Funds - Loans 9510438307 and 7583328300

98.  On January 27, 2021, Miller submitted PPP loan applications on behalf of Admin (Loan 9510438307) and North (Loan 7583328300). Miller signed the application as the president and an owner of both companies. Excerpts from the Second Draw PPP Application for Admin,

**COMPLAINT - 22**

loan 9510438307, are attached hereto as **Exhibit I**. Excerpts from the Second Draw PPP

Application for North, loan7583328300 are attached as Exhibit E.

99.    In loan applications 9510438307 and 7583328300, Admin and North, through

Miller, affirmatively certified that "[a]ll [SBA] loan proceeds will be used only for business-

related purposes as specified in the loan application and consistent with the Paycheck Protection

Program Rules . . . ." Exhibits D and I at 3. Admin and North, through Miller, also certified that

the "funds will be used to retain workers and maintain payroll; or make payments for mortgage

interest, rent, utilities, covered operation expenditures, covered property damage costs, covered

supplier costs, and covered worker protection expenditures as specified under the Payroll

Protection Program Rules." *Id.*

100.    On January 14, 2022, Admin and North, through Miller, applied for forgiveness

of loans 9510438307 and 7583328300. Excerpts from the Second Draw PPP Forgiveness

Application for Admin, loan 9510438307, are attached hereto as **Exhibit J**. Excerpts from the

Second Draw PPP Forgiveness Application for North, loan 7583328300, are attached hereto as

**Exhibit K**. In their applications for forgiveness, Admin and North, through Miller certified that

> [t]he dollar amount for which forgiveness is requested . . . was used to pay business
> costs that are eligible for forgiveness (payroll costs to retain employees; business
> mortgage interest payments; business rent or lease payments; business utility
> payments; covered operations expenditures; covered property damage costs;
> covered supplier costs; or covered worker protection expenditures).

Exhibits J and K at 3.

101.    Miller, Admin, and North also certified that they understood that "if the funds

were knowingly used for unauthorized purposes, the federal government may pursue recovery of

loan amounts and/or civil or criminal fraud charges . . ." and that they had "accurately verified

the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting

**COMPLAINT - 23**

forgiveness." *Id*. They further certified that "the information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. [They] underst[ood] that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law . . . " Exhibits J and K at 4.

102.    Miller and Admin's statements regarding the intended and actual use of the PPP loan funds were false. They did not intend to use the loan proceeds for eligible purposes, nor did they do so. Instead, they used the proceeds for a variety of non-eligible purposes, including, but not limited to, distributions to Miller's personal accounts, which were subsequently transferred to Miller's adult children or used to pay various personal bills.

103.    Miller, North, and Admin applied for the PPP loans in question on January 27, 2021. North and Admin received, collectively, $1,015,857.07 in PPP loans on February 4, 2021, and February 5, 2021. Immediately, on February 5, 2021, North and Admin together sent $90,000, respectively, to Janna Miller's personal checking account. Over the next five days, Miller made at least the following expenditures in contravention of the terms of the PPP program:

   a.    Two $5,000 transfers to Miller's adult daughter, Kaitlyn Winkles;

   b.    Two $5,000 payments to a Wells Fargo Credit Card;

   c.    $19,303.63 was paid to a Citi credit card;

   d.    $18,990 was paid for a rental of a vacation home in Hawaii; and

   e.    $11,969.49 was paid to RC Willey, a home furnishing company.

104.    Admin individually received $645,200.30 in PPP funds for loan number 9510438307 on February 5, 2021. To date, SBA has not authorized forgiveness for this loan, nor

has there been a calculation of interest owed. SBA also paid the lender, Glacier Bank, $19,356.01.

105.    North individually received $370,656.77 in loan funds for loan number 7583328300 on February 4, 2021. SBA denied forgiveness for the $370,656.77 and an appeal followed that is pending the outcome of the investigation underlying the instant complaint. No interest rate calculation has been made to date. SBA paid the lender, Glacier Bank, $11,119.70 in fees in connection with this loan.

<u>EIDL Misuse – Loan Number 8706308703 (Admin)</u>

106.    On April 12, 2021, Miller submitted an EIDL Loan Authorization and Agreement (LAA) on behalf of Admin. Excerpts from the LAA for Admin, loan 8706308703, are attached hereto as **Exhibit L**.

107.    Defendants Miller and Admin certified in the LAA that Admin would use all proceeds of the EIDL solely as working capital to alleviate economic injury caused by the COVID-19 pandemic.

108.    Defendants Miller and Admin also certified in the LAA that Admin none of the loan proceeds "are or will be primarily for personal, family or household purposes . . ." and that the "[b]orrower has read and understands the meaning and effect of all terms of this [LAA]." Exhibit L at 20.

109.    Defendants Miller and Admin also indicated that they understood that "whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. § 636(b) . . ." and that "any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions . . . ." Exhibit L at 7.

**COMPLAINT - 25**

110.    On July 10, 2021, Miller signed another LAA for an increase to the EIDL funding for Admin. Excerpts from the second EIDL Loan Authorization and Agreement (LAA) for Admin, to increase loan 8706308703, are attached hereto as **Exhibit M.** This LAA also included certifications regarding exclusive use of the funds for working capital as well as a prohibition against using the funds for "personal, family, or household purposes." Exhibit M at 21.

111.    Defendants Miller and Admin did not intend to use the EIDL funds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic.

112.    In fact, Defendants Miller and Admin intended to use and used the EIDL funds for unauthorized purposes, including, but not limited to, the purchase of real property in Kuna, Idaho for one of Miller's adult children.

113.    On or about June 15, 2021, Defendant Miller's daughter, Kaitlyn Winkles, signed an agreement to purchase a residence in Kuna, Idaho. Miller, or someone acting on her behalf, contacted the SBA at least three times in June of 2021 to request status updates regarding a $350,000 increase to Admin's EIDL funding. On July 21, 2021, one week after Admin received the $350,000 EIDL increase from the SBA, it sent $140,000 to JM Investments LLC. On July 21, 2021, JM Investments LLC paid Pioneer Title $250,000 for the residence in Kuna, Idaho.

114.    In total, Admin received $500,000 under EIDL loan number 8706308703. This money came directly from the SBA. As of January 22, 2025, Admin owed the SBA the entirety of the principal plus $54,431.22 in accrued interest for a total of $554,431.22.

<u>PPP and EIDL Fraud – Materiality</u>

115.    Defendants' false representations were material to their receipt of PPP and EIDL funds. Had the SBA known that Defendants were engaged in illegal activity (Medicaid Fraud), it would not have guaranteed any PPP loans – and no loans would have issued. Similarly, had the

SBA known that the Defendants were not going to use the money for eligible purposes, it would

not have guaranteed any PPP loans – and no loans would have issued. Likewise, had the SBA

known that the Defendants were not going to use the EIDL funds for eligible purposes, it would

have not issued a loan.

116.    Defendants' false representations were similarly material to their receipt of

forgiveness for PPP loans. Had the SBA known that the Defendants were engaged in illegal

activity and/or did not use the PPP funds for eligible purposes, it would not have remitted

forgiveness for those loans.

### FIRST CAUSE OF ACTION
### (False Claims Act: Presentation of False Claims)
### (PPP Loan Fraud: False Certification of No Illegal Activity)

117.    The United States incorporates all previous paragraphs as if fully set forth herein.

118.    Through the acts described above, Defendants Miller, Inclusion, and North

knowingly presented, or caused to be presented, to an officer or employee of the United States,

false or fraudulent claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A). Specifically, these

Defendants knowingly presented, or caused to be presented, false and fraudulent PPP loan

applications to the SBA for loan numbers 7607477102 (Inclusion First Draw), 7583328300

(North Second Draw), 7620877109 (North First Draw), and 4512548502 (Inclusion Second

Draw). These applications falsely claimed that Miller, Inclusion, and North were not engaged in

any illegal activity, when in fact they were contemporaneously engaged in a scheme to defraud

Medicaid in violation of Idaho Code § 56-227A and the False Claims Act.

119.    Miller, Inclusion, and North's false statements in the loan applications were

material.  Had Defendants Miller, Inclusion, and North been truthful and admitted that they were

engaged in illegal activity, SBA would not have guaranteed the PPP loans – and therefore no loans would have been issued.

120.    By virtue of the false or fraudulent claim presented, or caused to be presented, by Defendants Miller, Inclusion, and North, the United States sustained damages for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), and 4512548502 (Inclusion Second Draw) in the amount of $1,804,940.16. This figure represents the combined principal, interest, and lender's fees for these three loans. The United States is entitled to treble damages for these loans in the amount of $5,414,820.48 plus a civil penalty between $13,946 and $27,894 per loan application.

121.    By virtue of the false or fraudulent claim presented, or caused to be presented, the United States sustained damages for loan 7583328300 (North Second Draw) in the amount of $11,119.70. This figure represents only the lender fee, as the United States has neither forgiven the loan nor paid out on its guaranty to the lender that funded the PPP loan. The United States is entitled to treble damages for this fee in the amount of $33,359.10, plus a civil penalty between $13,946, and $27,894.

## SECOND CAUSE OF ACTION
### (False Claims Act: Making or Using False Record or Statement)
### (PPP Loan Fraud: False Certification of No Illegal Activity)

122.    The United States incorporates all previous paragraphs as if fully set forth herein.

123.    Through the acts described above, Defendants Miller, Inclusion, and North knowingly made, used, or caused to be made or used a false record or statement material to false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). Specifically, Defendants Miller, Inclusion, and North knowingly made, used, or caused to be made or used a false statement material to four PPP applications, namely, loan numbers 7607477102 (Inclusion First Draw),

**COMPLAINT - 28**

7583328300 (North Second Draw), 7620877109 (North First Draw), and 4512548502 (Inclusion Second Draw). In these applications, Defendants Miller, Inclusion, and North falsely claimed that Inclusion and North were not engaged in any illegal activity, when in fact they were contemporaneously committing a felony by defrauding Medicaid in violation of Idaho Code § 56-227A.

124.    The false records and statements are material because the SBA would not have guaranteed the above PPP loans – and therefore no loans would have issued – had it known that Defendants were engaged in illegal activity via the commission of Medicaid fraud.

125.    By virtue of the false records and statements that Defendants Miller, Inclusion, and North made, used, or caused to be made or used, the United States sustained damages for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), and 4512548502 (Inclusion Second Draw) in the amount of $1,804,940.16. This figure represents the combined principal, interest, and lender's fees for these three loans. The United States is entitled to treble damages for these loans in the amount of $5,414,820.48 plus a civil penalty between $13,946 and $27,894 per loan application.

126.    By virtue of the false records and statements that Defendants Miller, Inclusion, and North made, used, or caused to be made or used, the United States sustained damages for loan 7583328300 (North Second Draw) in the amount of $11,119.70. This figure represents only the lender fee, as the United States has not yet been fully damaged on this loan – a decision regarding forgiveness of the loan has not been made, nor has the United States paid the guaranty to the lender that issued the PPP loan. The United States is entitled to treble damages for this fee in the amount of $33,359.10, plus a civil penalty between $13,946, and $27,894.

### THIRD CAUSE OF ACTION
### (False Claims Act: Presentation of False Claims)
### (PPP Loan Fraud: Misuse)

127.    The United States incorporates all previous paragraphs as if fully set forth herein.

128.    Through the acts described above, Defendants Miller, Inclusion, North, and Admin knowingly presented, or caused to be presented, to an officer or employee of the United States, false or fraudulent claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A).

129.    Specifically, Defendants knowingly presented, or caused to be presented, false and fraudulent PPP loan applications – and applications for forgiveness for the same – to the SBA for loan numbers 7607477102 (Inclusion First Draw), 8555407105 (Admin First Draw), 7583328300 (North Second Draw), and 9510438307 (Admin Second Draw). These applications falsely claimed that Miller, Inclusion, North, and Admin would use the PPP loan proceeds for eligible purposes when they intended to, and did, in fact, misuse funds. Defendants misused funds for a variety of ineligible expenses, including a vacation home in Hawaii and other personal expenses.

130.    Miller's, Inclusion's, and North's false statements in the loan applications and forgiveness applications were material.  Had Defendants been truthful and informed the SBA of their intended and actual expenditures, SBA would not have guaranteed the PPP loans – and therefore no loans would have issued or have been forgiven.

131.    By virtue of the false or fraudulent claim presented, or caused to be presented, by Defendants, the United States sustained damages for loans 7607477102 (Inclusion First Draw), 8555407105 (Admin First Draw) in the amount of $1,475,476.03. This figure represents the combined principal, interest, and lender's fees for these two loans. The United States is entitled

to treble damages for these loans in the amount of $4,426,428.09, plus a civil penalty between $13,946 and $27,894 per each loan application and per each forgiveness application.

132.    By virtue of the false or fraudulent claim presented or caused to be presented the United States sustained damages for loans 7583328300 (North Second Draw) and 9510438307 (Admin Second Draw) in the amount of $30,475.71. This figure represents only the combined lender fees, as a decision on forgiveness has not yet been made with respect to these loans, nor has the United States paid the guaranty to the lender that issued the PPP loan. The United States is entitled to treble damages for these fees in the amount of $91,427.13, plus a civil penalty between $13,946, and $27,894 per each loan application and per each forgiveness application.

## FOURTH CAUSE OF ACTION
### (False Claims Act: Making or Using False Record or Statement)
### (PPP Loan Fraud: Misuse)

133.    The United States incorporates all previous paragraphs as if fully set forth herein.

134.    Through the acts described above, Defendants Miller, Inclusion, North, and Admin knowingly made, used, or caused to be made or used a false record or statement material to false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). Specifically, Defendants knowingly made, used, or caused to be made or used a false statement material to four PPP applications – and applications for loan forgiveness – concerning loan numbers 7607477102 (Inclusion First Draw), 7583328300 (North Second Draw), 8555407105 (Admin First Draw), and 9510438307 (Admin Second Draw). These applications falsely claimed that Miller, Inclusion, North, and Admin would use the PPP loan proceeds for eligible purposes when they intended to, and did, in fact, misuse funds for a variety of ineligible expenses. Defendants misused funds for a variety of ineligible expenses, including a vacation home in Hawaii and other personal expenses.

**COMPLAINT - 31**

135.    Miller's, Inclusion's, and North's false statements in the loan applications and forgiveness applications were material. Had Defendants been truthful and informed the SBA of their intended and actual expenditures, SBA would not have guaranteed the PPP loans – and therefore no loans would have issued or have been forgiven.

136.    By virtue of the false records and statements that Defendants presented, or caused to be presented, the United States sustained damages for loans 7607477102 (Inclusion First Draw), 8555407105 (Admin First Draw) in the amount of $1,475,476.03. This figure represents the combined principal, interest, and lender's fees for these two loans. The United States is entitled to treble damages for these loans in the amount of $4,426,428.09, plus a civil penalty between $13,946 and $27,894 per each loan application and per each forgiveness application.

137.    By virtue of the false or fraudulent records and statements presented, or caused to be presented, the United States sustained damages for loans 7583328300 (North Second Draw) and 9510438307 (Admin Second Draw) in the amount of $30,475.71. This figure represents only the combined lender fees, as a decision on forgiveness has not yet been made with respect to these loans, nor has the United States paid the guaranty to the lender that issued the PPP loan. The United States is entitled to treble damages for these fees in the amount of $91,427.13, plus a civil penalty between $13,946, and $27,894 per each loan application and per each forgiveness application.

### FIFTH CAUSE OF ACTION
### (False Claims Act: Presentation of False Claims)
### (EIDL Fraud: Misuse)

138.    The United States incorporates all previous paragraphs as if fully set forth herein.

139.    Through the acts described above, Defendants Miller and Admin knowingly presented, or caused to be presented, to an officer or employee of the United States, false or

fraudulent claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A). Specifically, Defendants Miller and Admin knowingly presented, or caused to be presented, a false and fraudulent EIDL application for loan number 8706308703. This application falsely claimed that Miller and Admin would use the EIDL proceeds for working capital to alleviate economic injury caused by the pandemic when they intended to, and did, in fact, misuse funds. Defendants' misuse included, but was not necessarily limited to, for the purchase of real property in Kuna, Idaho for one of Miller's adult children.

140.    Had Defendants been truthful and informed the SBA of the intended nature of their expenditures, SBA would not have issued the EIDL.

141.    By virtue of the false or fraudulent claim presented, or caused to be presented, by Defendants Miller and Admin, the United States sustained damages for loan 8706308703 (Admin EIDL) in the amount of $554,431.22. This figure represents the principal and interest accrued as of January 22, 2025. The United States is entitled to treble damages in the amount of $1,663,293.66, plus a civil penalty between $13,946 and $27,894 for the false and/or fraudulent loan application.

### SIXTH CAUSE OF ACTION
### (False Claims Act: Making or Using False Record or Statement)
### (EIDL Fraud Misuse)

142.    The United States incorporates all previous paragraphs as if fully set forth herein.

143.    Through the acts described above, Defendants Miller and Admin knowingly made, used, or caused to be made or used a false record or statement material to false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). Specifically, Defendants Miller and Admin knowingly made, used, or caused to be made or used a false statement material to an EIDL application. Specifically, Miller and Admin made, used, or caused to be made or used a

**COMPLAINT - 33**

false record or statement material to false or fraudulent claim for an EIDL application under loan number 8706308703. This application falsely claimed that Miller and Admin would use the EIDL proceeds for working capital to alleviate economic injury caused by the pandemic when they intended to, and did in fact, misuse funds. This misuse included, but was not necessarily limited to, the purchase of real property in Kuna, Idaho for one of Miller's adult children.

144.    Had Defendants been truthful and informed the SBA of the intended nature of their expenditures, SBA would not have issued the EIDL.

145.    By virtue of the false records and/or statements presented, or caused to be presented, by Defendants Miller and Admin, the United States sustained damages for loan 8706308703 in the amount of $554,431.22. This figure represents the principal and interest accrued as of January 22, 2025. The United States is entitled to treble damages in the amount of $1,663,293.66, plus a civil penalty between $13,946 and $27,894 for the false and/or fraudulent loan application.

### SEVENTH CAUSE OF ACTION
### (15 U.S.C. § 636(b)(16)(E)(ii): Wrongful Misapplication of EIDL Proceeds)
### (EIDL Fraud)

146.    The United States incorporates all previous paragraphs as if fully set forth herein.

147.    Through the acts described above, Defendants Miller and Admin wrongfully misapplied the EIDL funds received by Admin. Instead of using the EIDL proceeds (Loan 8706308703) for working capital to alleviate economic injury caused by the pandemic when, they misused those funds including, but not necessarily limited to, for a purchase of real property in Kuna, Idaho for one of Miller's adult children.

148.     By virtue of Defendants Miller and Admin's wrongful misapplication, the United States sustained damages in the amount of $750,000. This figure represents the "amount equal to one-and-one half times the original principal amount of the loan." 15 U.S.C. § 636(b)(16)(E)(ii).

### EIGHTH CAUSE OF ACTION
### (FIRREA: PPP and EIDL Fraud)

149.     The United States incorporates all previous paragraphs as if fully set forth herein.

150.     Defendants knowingly made false statements to the SBA for the purposes of obtaining PPP and EIDL loans, influencing the action of the SBA, and/or obtaining something of value in violation of 15 U.S.C. § 645(a).

151.     The false statements made by Defendants resulted in a pecuniary loss to the SBA of at least $4,119,498.68. This is the aggregate total of the pecuniary loss for loans 7607477102 (Inclusion First Draw), 4512548502 (Inclusion Second Draw), 7620877109 (North First Draw), 7583328300 (North Second Draw), 8555407105 (Admin First Draw), 9510438307 (Admin Second Draw), and 8706308703 (Admin EIDL). Under 12 U.S.C. § 1833a(b), Defendants are liable for a civil penalty not to exceed either $2,449,575 or the amount of the pecuniary loss to the SBA, whichever is greater.

### NINTH CAUSE OF ACTION
### (False Claims Act: Presentation of False Claims)
### (Medicaid Fraud)

152.     The United States incorporates all previous paragraphs as if fully set forth herein.

153.     Through the acts described above, Defendants Miller, Inclusion, and North knowingly presented or caused to be presented to the United States, via IDHW, false or fraudulent Medicaid claims for services purportedly provided to Medicaid beneficiaries in violation of 31 U.S.C. § 3729(a)(1)(A).

154.    The claims were false because Defendants Miller, Inclusion, and North knew the services for which reimbursement was sought had not been provided to the Medicaid beneficiary.

155.    Defendants Miller's, Inclusion's, and North's false representations as to the services provided were material. IDHW and the United States were unaware of the falsity or fraudulence of the claims Defendants made or caused to be made. Had the United States, via IDHW, known that Defendants did not actually provide the services included in the 43 claims for which they requested reimbursement, the United States (via IDHW) would not have paid the Defendants. As a result of Defendants' 43 false claims, Medicaid incurred no less than $145,495.02 in damages. Miller paid $82,607.12 in restitution connected to the State of Idaho criminal matter. Taking into account an offset for restitution, Defendants Miller, Inclusion, and North are liable for treble damages in the amount of $353,877.94 and a civil penalty of between $13,946 and $27,894 for each of the 43 false or fraudulent Medicaid violations.

## TENTH CAUSE OF ACTION
### (False Claims Act: Making or Using False Record or Statement)
### (Medicaid Fraud)

156.    The United States incorporates all previous paragraphs as if fully set forth herein.

157.    Defendants Miller, Inclusion, and North knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent Medicaid claims for services purportedly provided to Medicaid beneficiaries in violation of 31 U.S.C. § 3729(a)(1)(B).

158.    Specifically, Defendants Miller, Inclusion, and North knowingly made, used, or caused to be made or used false billing logs and progress notes in support of at least 43 Medicaid claims that were false in that they sought reimbursement for services that had not been provided.

159.    These false records were material.  Had Medicaid known that Defendants did not actually provide the services for which they claimed reimbursement, Medicaid would not have paid the claims.

160.    As a result of Defendants' materially false statements or records, Medicaid was damaged in the amount of not less than $145,495.02. Miller paid $82,607.12 in restitution connected to the State of Idaho criminal matter. Taking into account an offset for restitution, Defendants Miller, Inclusion, and North are liable for treble damages in the amount of $353,877.94 as well as civil penalties between $13,946 and $27,894 for each of the 43 false or fraudulent claims.

### ELEVENTH CAUSE OF ACTION
### (Common Law Fraud)
### (PPP Loan Fraud: False Certification of No Illegal Activity)

161.    The United States incorporates all previous paragraphs as if fully set forth herein.

162.    Defendants engaged in conduct designed to deceive the SBA as to the eligibility of Inclusion and North to receive PPP loans.

163.    Defendants did so to acquire forgivable loans that they were not entitled to receive.

164.    Defendants knowingly made false and fraudulent representations that Inclusion and North were not engaged in illegal conduct, when in fact they were violating Idaho state law (i.e., Provider Fraud under Idaho Code § 56-227(A), as well as federal law (i.e., the FCA under 31 U.S.C. § 3729 and health care fraud, 18 U.S.C. § 1347).

165.    The SBA was not aware when it guaranteed the PPP loans for Inclusion and North that Defendants' statements regarding illegal activity were false.

166.     Had Defendants Miller, Inclusion, and North been truthful and admitted that they were engaged in illegal activity, SBA would not have guaranteed the PPP loans – and therefore no loans would have been issued.

167.     The SBA reasonably relied upon Defendants Miller, Inclusion, and North's fraudulent statements that said Defendants were not engaged in illegal activity when it guaranteed and, in some instances, subsequently approved forgiveness for PPP loans.

168.     The SBA was entitled to rely upon Defendants Miller, Inclusion, and North's fraudulent statements that said Defendants were not engaged in illegal activity when it guaranteed and, in some instances, subsequently approved forgiveness for PPP loans.

169.     As a result of Defendants Miller, Inclusion, and North's false and fraudulent statements, the United States was damaged and is entitled to recover damages and punitive damages.

170.     Specifically, the United States sustained damages for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), and 4512548502 (Inclusion Second Draw) in the amount of $1,804,940.16. This figure represents the combined principal, interest, and lender's fees for these three loans.

171.     Specifically, the United States sustained damages for loan 7583328300 (North Second Draw) in the amount of $11,119.70. This figure represents only the lender fee, as the United States has not yet been fully damaged– a decision regarding forgiveness of the loan has not been made, nor has the United States paid the guaranty to the lender that issued the PPP loan.

## TWELFTH CAUSE OF ACTION
### (Common Law Fraud)
### (PPP Loan Fraud: Misuse)

172.     The United States incorporates all previous paragraphs as if fully set forth herein.

173.    Defendants Miller, Inclusion, North, and Admin engaged in conduct designed to deceive the SBA as to the eligibility of Inclusion, North, and Admin to receive forgivable PPP loans – and forgiveness for the same.

174.    Specifically, in applications for PPP loans – and applications for forgiveness of these loans – Defendants falsely claimed that PPP loan proceeds would be used for eligible purposes, when, in fact, they intended to, and did in fact, misuse funds. Defendants misuse included, but was not necessarily limited to, the purchase of real property, rental property in Hawaii, and for other ineligible expenses, including personal spending.

175.    The SBA was not aware when it guaranteed the PPP loans – or when it approved forgiveness for the same, that the Defendants' statements regarding usage of loan proceeds were false.

176.    Had Defendants been truthful and admitted their misuse, SBA would not have guaranteed the PPP loans – and therefore no loans would have been issued.

177.    Had Defendants been truthful and admitted their misuse, SBA would not have remitted forgiveness for PPP loans.

178.    The SBA reasonably relied upon Defendants fraudulent statements regarding usage of funds when it guaranteed and, in some instances, subsequently approved forgiveness for PPP loans.

179.    The SBA was entitled to rely upon Defendants Miller, Inclusion, and North's fraudulent statements regarding usage of funds when it guaranteed and, in some instances, subsequently remitted forgiveness for PPP loans.

180.    As a result of Defendants' false and fraudulent statements, the United States was damaged and is entitled to recover damages and punitive damages.

**COMPLAINT - 39**

181.    Specifically, the United States sustained damages for loans 7607477102 (Inclusion First Draw) and 8555407105 (Admin First Draw) in the amount of $1,475,476.03. This figure represents the combined principal, interest, and lender's fees for these two loans.

182.    Specifically, the United States sustained damages for loans 7583328300 (North Second Draw) and 9510438307 (Admin Second Draw) in the amount of $30,475.71. This figure represents only the combined lender fees, as a decision on forgiveness has not yet been made with respect to these loans.

### THIRTEENTH CAUSE OF ACTION
### (Common Law Fraud)
### (EIDL Fraud: Misuse)

183.    The United States incorporates all previous paragraphs as if fully set forth herein.

184.    Defendants Miller and Admin engaged in conduct designed to deceive the SBA as to the eligibility of Admin to receive an EIDL.

185.    Specifically, in an application for an EIDL, Defendants Miller and Admin falsely claimed that EIDL proceeds would be used for working capital to alleviate economic injury caused by the pandemic, when, in fact, they intended to, and did, in fact, misuse funds. The misuse included, but was not necessarily limited to, the purchase of real property in Kuna, Idaho for one of Miller's adult children.

186.    The SBA was not aware when it issued the EIDL that the Defendants' statements regarding usage of loan proceeds were false.

187.    Had Defendants been truthful and admitted their misuse, SBA would not have issued the EIDL.

188.    The SBA reasonably relied upon Defendants fraudulent statements regarding usage of funds when it issued the EIDL.

189.    The SBA was entitled to rely upon Defendants Miller and Admin's fraudulent statements regarding their intended use of the funds when it issued the EIDL.

190.    As a result of Defendants' false and fraudulent statements, the United States was damaged and is entitled to recover damages and punitive damages.

191.    Specifically, the United States sustained damages for loan 8706308703 (Admin EIDL) in the amount of at least $554,431.22. This figure represents the combined principal and interest accrued as of January 22, 2025.

**FOURTEENTH CAUSE OF ACTION**
**(Unjust Enrichment:**
**(PPP Fraud: False Certification of No Illegal Activity)**

192.    The United States incorporates all previous allegations as if fully set forth herein.

193.    By reason of the conduct described above and their violation of the False Claims Act, Defendants Miller, Inclusion, and North were unjustly enriched and are liable to account for and pay such amounts.

194.    Specifically, Defendants were unjustly enriched, and the United States has been damaged via the payment of principal and interest for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), and 4512548502 (Inclusion Second Draw) in the amount of $1,752,874.81.

195.    Defendants are therefore liable to the United States to account for these damages and pay restitution to the United States in the amount of $1,752,874.81.

**FIFTEENTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(PPP Loan Fraud: Misuse)**

196.    The United States incorporates all previous paragraphs as if fully set forth herein.

197.    By reason of the conduct described above and their violation of the False Claims Act, Defendants Miller, Inclusion, North, and Admin were unjustly enriched and are liable to account for and pay such amounts.

198.    Specifically, Defendants were unjustly enriched, and the United States has been damaged via the payment of principal and interest for loans 7607477102 (Inclusion First Draw) and 8555407105 (Admin First Draw) in the amount of $1,432,801.03.

199.    Defendants are therefore liable to the United States to account for the PPP funds they received in the amount of $1,432,801.03.

## SIXTEENTH CAUSE OF ACTION
### (Unjust Enrichment)
### (EIDL Loan Fraud: Misuse)

200.    The United States incorporates all previous paragraphs as if fully set forth herein.

201.    By reason of the conduct described above and their violation of the False Claims Act, Defendants Miller and Admin were unjustly enriched and are liable to account for and pay such amounts.

202.    Specifically, Defendants were unjustly enriched, and the United States sustained damages for loan 8706308703 (Admin EIDL) in the amount of $554,431.22. This figure represents the combined principal and interest accrued as of January 22, 2025.

## SEVENTEENTH CAUSE OF ACTION
### (Payment by Mistake)
### (PPP Fraud: False Certification of No Illegal Activity)

203.    The United States incorporates all previous allegations as if fully set forth herein.

204.    This count seeks to recover monies paid by the United States to Defendants Miller, Inclusion, and North by mistake.

**COMPLAINT - 42**

205.    The United States government unaware of the falsity of claims made by Defendants Miller, Inclusion, and North and in reliance of accuracy thereof paid Defendants Inclusion and North for the claims.

206.    The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims and other documents submitted for payment or approval by Miller, Inclusion, and North paid Inclusion and North sums of money to which it was not entitled. Therefore, Miller, Inclusion, and North are liable to account and pay such amounts.

207.    Specifically, Miller, Inclusion, and North are liable for the principal for loans 7620877109 (North First Draw), 4512548502 (Inclusion Second), and 7607477102 (Inclusion First Draw) in the amount of $1,735,511.80.

## EIGHTEENTH CAUSE OF ACTION
### (Payment by Mistake)
### (PPP Fraud: Misuse)

208.    The United States incorporates all previous allegations as if fully set forth herein.

209.    This count seeks to recover monies paid by the United States to Defendants Miller, Inclusion, North and Admin by mistake.

210.    The United States government unaware of the falsity of claims made by Defendants Miller, Inclusion, North and Admin and in reliance of accuracy thereof paid Defendants Inclusion, North, and Admin for the claims.

211.    The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims and other documents submitted for payment or approval by Miller, Inclusion, North, and Admin paid Inclusion, North, and Admin sums of

**COMPLAINT - 43**

money to which it was not entitled. Therefore, Miller, Inclusion, North, and Admin are liable to account and pay such amounts.

212.    Specifically, Miller, Inclusion, North, and Admin are liable for the principal for loans 7607477102 (Inclusion First Draw) and 8555407105 (Admin First Draw) in the amount of $1,422,500.

**NINETEENTH CAUSE OF ACTION**
**(Payment by Mistake)**
**(EIDL Fraud: Misuse)**

213.    The United States incorporates all previous allegations as if fully set forth herein.

214.    This count seeks to recover monies paid by the United States to Defendants Miller and Admin by mistake.

215.    The United States government unaware of the falsity of the claim made by Defendants Miller and Admin and in reliance of accuracy thereof paid Defendant Admin the claim.

216.    The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims and other documents submitted for payment or approval by Miller and, and Admin paid Admin sums of money to which it was not entitled. Therefore, Admin is liable to account and pay such amounts.

217.    Specifically, Miller and Admin are liable for the principal for EIDL number 8706308703 (Admin) in the amount of $500,000.

**TWENTIIETH CAUSE OF ACTION**
**(Breach of Contract)**
**(EIDL Fraud: Misuse)**

218.    The United States incorporates all previous allegations as if fully set forth herein.

219.    Defendants Miller and Admin's wrongful misapplication of funds constitutes a material breach of its EIDL loan authorization agreements (LAA) with United States.

220.    Defendants have failed to cure this material breach.

221.    Defendants' material breach of the EIDL agreement has caused pecuniary harm to the United States in an amount equal to all unpaid principal, interest, and any fee or charge due under the Agreement, i.e., at least $554,431.22, plus any attorney's fees and costs incurred in the enforcement of the Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that this Court enter judgment in its favor and against Defendants granting the United States the forms of relief identified below.

222.    As to the **First** and **Second** Causes of Action (False Claims Act- PPP Fraud-Illegal Activity), treble damages in the amount of at least $5,448,179.58. This figure represents the trebled losses incurred by the United States for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), 4512548502 (Inclusion Second Draw, and 7583328300 (North Second Draw) The United States also requests a civil penalty in the amount of $27,894 for each of the four false or fraudulent loan applications.

223.    As to the **Third** and **Fourth** Causes of Action (False Claims Act-PPP Fraud-Misuse), treble damages in the amount of at least $4,517,855.22. This figure represents the losses incurred by the United States for loans numbers 7607477102 (Inclusion First Draw), 7583328300 (North Second Draw), 8555407105 (Admin First Draw), and 9510438307 (Admin Second Draw). The United States also requests a civil penalty of $27,894 for each of the four false or fraudulent loan applications; and an additional civil penalty of $27,984 for each of the false or fraudulent loan forgiveness applications.

224.     As to the **Fifth** and **Sixth** Causes of Action (False Claims Act- EIDL Fraud-Misuse), treble damages in the amount of at least $1,663,293.66. This figure represents the losses incurred by the United States United States for loan number 870630870 (Admin EIDL). The United States also requests a civil penalty of $27,894 for the false or fraudulent EIDL application.

225.     As to the **Seventh** Cause of action (Wrongful Misapplication under 15 U.S.C. § 636), one and a half times the amount of the principal of the loan, ie $750,000.

226.     As to the **Eighth** Cause of Action (FIRREA), civil penalties the amount of the pecuniary loss sustained by the SBA, i.e., at least $4,119,498.68.

227.     As to **Ninth** and **Tenth** Causes of Action, (False Claims Act – Medicaid Fraud) treble damages in the amount of $353,877.94 and civil penalties for each of the 43 false or fraudulent Medicaid claims.

228.     As to the **Eleventh** Cause of Action (Common Law Fraud – PPP Fraud – Illegal Activity), the amount of the United States' damages for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), 4512548502 (Inclusion Second Draw, and 7583328300 (North Second Draw). This is a figure of at least $1,816,059.86.

229.     As to the **Twelfth** Cause of Action (Common Law Fraud: PPP Loan Fraud Misuse), the amount of the United States' damages for loans 7607477102 (Inclusion First Draw), 7583328300 (North Second Draw), 8555407105 (Admin First Draw), and 9510438307 (Admin Second Draw). This is a figure of at least $1,505,951.74.

230.     As to the **Thirteenth** Cause of Action (Common Law Fraud: EIDL Fraud – Misuse), the amount of the United States' damages loan 870630870 (Admin EIDL). This is a figure of at least $554,431.22.

**COMPLAINT - 46**

231.    As to the **Fourteenth** Cause of Action (Unjust Enrichment: PPP Fraud – Illegal Activity), the amount of the United States' damages for loans 7620877109 (North First Draw), 7607477102 (Inclusion First Draw), 4512548502 (Inclusion Second Draw), and 7583328300 (North Second Draw). This is a figure of at least $1,752,874.81.

232.    As to the **Fifteenth** Cause of Action (Unjust Enrichment: PPP Fraud – Misuse), the amount of the United States' damages for loans 7607477102 (Inclusion First Draw), 7583328300 (North Second Draw), 8555407105 (Admin First Draw), and 9510438307 (Admin Second Draw). This is a figure of at least $1,432,801.03.

233.    As to the **Sixteenth** Cause of Action (Unjust Enrichment: EIDL Fraud – Misuse) the amount of the United States' damages for loan 870630870 (Admin EIDL). This is a figure of at least $554,431.22.

234.    As to the **Seventeenth** Cause of Action (Payment by Mistake: PPP Fraud – Illegal Activity), the amount of the United States' damages for loans 7620877109 (North First Draw), 4512548502 (Inclusion Second), and 7607477102 (Inclusion First Draw) is at least $1,735,511.80.

235.    As to the **Eighteenth** Cause of Action (Payment by Mistake: PPP Fraud – Misuse), the amount of the United States' damages for loans 7607477102 (Inclusion First Draw) and 8555407105 (Admin First Draw) is at least $1,422,500.

236.    As to the **Nineteenth** Cause of Action (Payment by Mistake: EIDL Fraud – Misuse), the amount of the United States' Damages for loan 8706308703 (Admin EIDL) is at least $500,000.

237.    As to the **Twentieth** Cause of Action (Breach of Contract – EIDL), the amount all unpaid principal, interest, at least $554,431.22, plus any attorney's fees and costs incurred in the enforcement of the terms of the EIDL agreement.

238.    Such other relief as this Court may deem just and proper, together with interest, costs, fees, reasonable attorney's fees, and expenses of this action.

The United States hereby demands trial by a jury as to all issues so triable.

Respectfully submitted this 25th day of February 2025.

JUSTIN D. WHATCOTT
ACTING UNITED STATES ATTORNEY
By:


*/s/ Elliot B. Wertheim*
ELLIOT B. WERTHEIM
Assistant United States Attorney

**COMPLAINT - 48**