UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JANNA MILLER; INCLUSION, INC.;<br>INCLUSION NORTH, INC.; and<br>INCLUSION ADMINISTRATIVE<br>SERVICES, INC.,<br><br>    Defendants. | Case No. 1:25-cv-00099-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Janna Miller, Inclusion, Inc., Inclusion North, Inc., and Inclusion Administrative Services, Inc.'s (collectively, "Defendants") Motion to Dismiss. Dkt. 20. Plaintiff, the United States of America (the "Government") opposes the Motion (Dkt. 29), and the Defendants filed a Reply. Dkt. 32.

Upon review, and for the reasons set forth below, the Court DENIES the Motion.[1]

## II. BACKGROUND

On February 25, 2025, the Government filed the instant Complaint alleging the various Defendants made false or fraudulent claims to the United States Small Business Administration and fraudulently obtained $3 million in Paycheck Protection Program loans

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. R. 7.1(d)(1)(B).

and subsequent forgiveness of those loans. *See generally* Dkt. 1. Alleging twenty causes of action, the Government seeks damages as well as civil penalties under the False Claims Act ("FCA"), the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), restitution under a breach of contract claim, and damages and monetary relief under equitable theories of fraud, unjust enrichment, and payment by mistake. *See generally id.* at 45–48.

Broadly speaking, the Government alleges Miller—as CEO, owner, and operator of the defendant companies—applied for and secured PPP and EIDL loans under false pretenses and then improperly spent the money on purchases unrelated to the business.[2] The Government also alleges the defendant companies were aware of the misrepresentations and, in fact, benefitted from them. *See generally* Dkt. 1.

Defendants answered the Government's Complaint denying several allegations, claiming affirmative defenses, and counterclaiming against the Government for Breach of Contract. *See generally* Dkt. 7. The Government moved to dismiss the Defendants' counterclaim for lack of subject matter jurisdiction because the Government had not waived sovereign immunity to be sued in district court. Dkt. 15. The Defendants responded to that motion claiming that, under the doctrine of recoupment—which allows for counterclaims against the Government to diminish their recovery—jurisdiction in the district court was allowed and proper. *Id.*

---

[2] Miller's alleged improper expenditures included purchasing a home for her adult child (Dkt. 29, at 3), a Peloton exercise bike (Dkt. 1, at 3), furniture (*Id.*), and renting a vacation home in Hawaii (*Id.* at 24), as well as transferring thousands of dollars to her personal bank accounts to be used for unknown purposes (*Id.* at 21, 22, 24).

MEMORANDUM DECISION AND ORDER - 2

The Government replied countering Defendants were not trying to diminish the Government's recovery, but rather, they were seeking affirmative relief from the Government for breach of contract claims and that doing so did not overcome the barrier of sovereign immunity. Dkt. 25.

The Court agreed with the Government and dismissed Defendants' counterclaims. Dkt. 34.

The Defendants subsequently filed the instant Motion to Dismiss alleging the Government has not sufficiently pleaded its causes of action under the Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dkt. 20. The Government opposes the Motion arguing it has met its low burden at this stage of the proceedings. Dkt. 29.

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations;" however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

MEMORANDUM DECISION AND ORDER - 3

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept unreasonable inferences or legal conclusions as true. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 679.

Considering *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Finally, when a complaint or claim "sounds in fraud," it is subject to heightened pleading standards under Fed. R. Civ. P. 9(b). *In re Finjan Holdings*, 58 F.4th 1048, 1057 (9th Cir. 2023). That rule states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To properly plead a claim subject to Fed. R. Civ. P. 9(b), the allegations must contain the

"who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation modified).

## IV. ANALYSIS

### A. Timing of Motion

At the outset, the Government argues because Defendants filed the instant Motion *after* filing their Answer, Defendants waived their ability to raise a 12(b)(6) defense. In response to this, Defendants argue the Motion is timely and should simply be converted to a Rule 12(c) motion for judgment on the pleadings.

While the Government is partially correct (in that the text of Rule 12(b) states that such motions should be made before pleading if responsive pleading is permitted), it ignores standard Ninth Circuit practice, which is to do as Defendants recommend and convert the motion to a Rule 12(c) motion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (clarifying that 12(b)(6) motions brought after the close of pleading should be treated as 12(c) motions pursuant to Rule 12(h)(2)). Accordingly, the Court holds that the Motion is timely and will be treated as a 12(c) motion.

### B. Pleading Standards and Plausibility of Claims

In its response to Defendant's Motion to Dismiss, the Government spends significant time setting forth its allegations against Defendants. Similarly, Defendants spend numerous pages in briefing arguing for their interpretation of the laws the Government alleges they violated.

At this stage in the litigation, the Court finds it appropriate to remind both parties that this is a motion to dismiss. Certainly, the Court must engage in a cursory review of the

underlying facts of the case and the applicable laws, but the Court will do no more than is necessary to determine whether the Government has pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Factual disputes are better left for summary judgment and trial, if necessary.

As a threshold matter, Defendants claim the Court should apply the heightened pleading standards of Federal Rule of Civil Procedure 9(b), and the Government does not appear to dispute Rule 9's applicability. Where the parties diverge is in their opinion of whether the Government pled its allegations with sufficient particularity to plausibly assert Defendants, in fact, committed fraud.

The crux of the issue is the parties' disagreements on whether the Government has alleged sufficient facts to support the notion Defendants falsified PPP and EIDL loan applications, whether Defendants had the requisite scienter, or mental intent, for the same, and whether the Government has alleged Defendants actually misused any of the funds they received. The Court will discuss each in turn.

### 1. False Representations

The Supreme Court has explained that in enacting the FCA, "Congress wrote expansively, meaning to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) (citation modified). FCA liability extends "to each claim submitted to the government under a contract, when the contract or extension of the government benefit was originally obtained through false statements or fraudulent conduct." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017). The Government

MEMORANDUM DECISION AND ORDER - 6

contends its allegations are based upon this fraud-in-the-inducement theory because Defendants provided false representations to obtain the loans.

Defendants argue, *inter alia*, for dismissal because the Complaint is "premised on the notion that Defendants falsely certified that they were not engaged in illegal activity," and because the Government failed to allege "who, what when, where, and how each individual Defendant provided false certifications." Dkt. 21, at 8–9 (internal quotation marks omitted). This argument fails for multiple reasons.

First, the Government's Complaint contains specific and pervasive allegations of wrongdoing. For each of the twenty counts in the Complaint, the Government points to the relevant law and the conduct of Defendants that allegedly violated it. Granted, the Government does not include minute detail of each alleged violation, but such specifics are not necessary, especially at the pleading stage. As the Ninth Circuit has stated:

> Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity. But "[r]ule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter." 2A J. Moore, Federal Practice ¶ 9.03, at 1930 (2d ed. 1972). Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge or condition of the mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.

*Walling v. Beverly Enters.,* 476 F.2d 393, 397 (9th Cir. 1973). The Court finds the Government has met this burden. The Complaint alleges that Defendants were engaged in illegal activity (the Medicaid fraud), that they knowingly made or caused to be made false representations about the illegal activity in order to secure Paycheck Protection Program ("PPP") and Economic Injury Disaster ("EIDL") loans, and that the loan funds were improperly used by Defendants. *See generally* Dkt. 1. Specifically, in support of the

MEMORANDUM DECISION AND ORDER - 7

allegations of illegal activity, the Government alleges Defendant Miller herself committed Medicaid fraud on numerous occasions and in fact pled guilty to that crime in state court. Dkt 1, at 12. Further, the Government supports this contention by providing the specific dates of Defendants' loan applications, what representations Defendants made on those applications, and referring to Miller's fraud conviction as evidence of Defendants making false representations on the applications. Dkt. 1, at 15–16.

In short, the Government pled with as much particularity as was reasonably practicable as to the "who, what, when, where, and how" of Defendants' alleged fraud.

Second, while Defendants do not explicitly state as much, the defendant companies (Inclusion, Inc., Inclusion North, Inc., and Inclusion Administrative Services, Inc.) seemingly attempt to divorce themselves from the conduct of Defendant Miller, who was the founder and CEO of all three companies. This argument is, simply put, a non-starter.

Basic tenets of agency law explain that a business is often liable for the wrongs of its agents when the agents act within the scope of their employment and with apparent authority. *See, e.g., Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566–67 (1982); *see also In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (holding it is "fundamental that an employer is liable for the torts of his employee committed while acting in the scope of his employment.") (citation modified). Furthermore, common sense indicates that attempting to separate the companies from Miller's conduct is splitting hairs. Miller completed each loan application in her professional capacity as CEO, President, or Founder of each company. Accordingly, the Court rejects Defendants' argument that Miller should be viewed as having acted

MEMORANDUM DECISION AND ORDER - 8

independently of the companies.

Third, Defendants argue the Government's claims of false representations should fail because the Government supposedly premised its argument on Defendants' claim that they were not "engaged in illegal activity," a phrase Defendants say is ambiguous. Defendants believe that phrase is ambiguous, and argue because no one associated with the companies had been charged with or convicted of a crime *at the time of the loan applications*, they were not "engaged in illegal activity." The Court finds this unpersuasive.

Defendants explain the questions on the loan application do not ask whether the applicants had previously committed any crimes and instead only ask whether they were "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges were brought in any jurisdiction, or presently incarcerated, or on probation or parole" (Dkt. 1-2, at 2) and whether the applicants had been convicted of or pled guilty to a felony within the last five years. Relying on this language, Defendants claim that they did not make any false representations on the loan applications because Miller hadn't been charged at the time she filled out the applications.

Frankly, the Court finds this argument distasteful and disingenuous. Defendants hinge their entire argument on a timing technicality, asserting that they technically made no false representations because Miller hadn't been convicted of provider fraud yet, but this ignores the rationale behind the restrictions on loans to those engaged in illegal activity.

The Small Business Administration chose to include the restrictions: (1) to ensure a higher likelihood the loans would be repaid by not lending to borrowers who would likely

MEMORANDUM DECISION AND ORDER - 9

end up incarcerated, and (2) to prevent the misuse of loan funds.[3] Indeed, the Supreme Court has held that liability under the FCA can arise when disclosing noncompliance with the law is a required condition to receive payment from a government program and defendants fail to so disclose. *See Universal Health Services, Inc. v. U.S.*, 579 U.S. 176, 181 (1989).  Notably, in *Universal Health Services*, the Supreme Court explained that "[d]efendants can be liable for violating requirements even if they were not expressly designated as conditions of payment," and that "[w]hat matters is . . . whether the defendant knowingly violated a requirement that the defendant knows *is material to the Government's payment decision*." *Id.* (emphasis added).

Here, it is true that Miller had not yet been charged with, or convicted of, provider fraud at the time of the loan applications. Under Defendants' interpretation of the language on the loan application, that would mean they technically did not make a false representation about their engagement in illegal activity. However, even if Defendants' interpretation was technically correct, their actions are exactly those contemplated by the SBA when it decided to include the restriction against loaning money to those engaged in criminal activity. And what's more, the Supreme Court's holding in *Universal Health Services* indicates that, even though at the time of the loan applications Miller had not yet been convicted of provider fraud, her knowledge of and failure to disclose her engagement in illegal activity almost certainly constitutes a materially false representation for which Defendants may be liable.

---

[3] Business Loan Program Temporary Changes; Paycheck Protection Program-Additional Eligibility Revisions to First Interim Final Rule, 85 Fed. Reg. 38301, 38303 (June 26, 2020).

MEMORANDUM DECISION AND ORDER - 10

This is a case where Defendants may not have violated the letter of the law—if their interpretation of the law is to be accepted over the Supreme Court's—but the Government has certainly alleged they violated the spirit of the law. As such, the Court also rejects this argument.

Finally, Defendants argue they were not engaged in illegal activity because their business focused on providing home healthcare services. This is another instance of Defendants trying to separate the companies from Miller. Specifically, Defendants argue that the companies were not engaged in illegal activity because their purpose was to provide healthcare services, as contrasted against businesses whose purpose violated the law itself. The example Defendants provide of the latter type of business is a cannabis dispensary operating in a state that has legalized marijuana because the primary purpose of that business would, nevertheless, violate federal law. But this comparison is both inapposite and irrelevant.

The Government does not allege the illegal activity in which Defendants were engaged was providing healthcare services. The Government alleges Defendants engaged in illegal activity by: (1) committing provider fraud, and (2) failing to disclose that on the loan applications. Further, contrary to what Defendants would have the Court believe, businesses with illegal purposes were *not* the only businesses deemed ineligible for government loan assistance; businesses which had *owners* (of 20 percent equity or more) who were engaged in illegal activity were also ineligible.[4] Miller was the owner of the

---

[4] 85 Fed. Reg. at 38303.

MEMORANDUM DECISION AND ORDER - 11

defendant companies,[5] and Defendants concede Miller engaged in illegal activity.[6] Thus, the distinction Defendants draw is not relevant to determining whether they were engaged in illegal activity because Miller's engagement in illegal activity is easily imputed to the companies themselves.

In sum, the Government's allegations that Defendants made (or caused to be made) false statements are plausible and survive initial review.

### 2. Scienter

Defendants next argue the Complaint failed to allege Defendants *knowingly* made false representations. Defendants' argument emphasizes that the scienter requirement is strict under the FCA, citing several Supreme Court cases in support. However, even under Defendants' explanation of the scienter requirement, which states that "the FCA requires a subjective inquiry as to what the defendant thought when submitting the false claim," Dkt. 21, at 15 (quoting *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749–751 (2023), the Complaint clearly alleges Miller knew she had committed provider fraud, and further that she was the one to make the false representations on the applications. These allegations, if proven, would be enough to satisfy the subjective inquiry required to meet the scienter requirement. Accordingly, the Government's allegation of scienter is plausible.

### 3. Misuse of Funds

The final point of contention between the parties is whether the Complaint adequately alleges Defendants falsely represented their intent to use the loan funds for

---

[5] *See* Dkt. 29, at 2.
[6] *See generally* Dkt. 21.

MEMORANDUM DECISION AND ORDER - 12

eligible purposes or actually misused the funds. Defendants argue the Government did not plead specific factual allegations to support its claims. However, the Court again disagrees.

The Government alleges that Miller and the companies certified the funds would be used for proper purposes. *See* Dkt. 1, at 21. Further, the Complaint lists in great detail the alleged misuse of the funds, for everything from an $18,000 Hawaiian vacation to nearly $20,000 spent on furniture at RC Willey. *See* Dkt. 1, at 22, 24.

These allegations are certainly enough to meet the pleading requirements and avoid dismissal. Because of this, the Court finds the Government plausibly alleged Defendants misuse of the loan funds.

## V. CONCLUSION

As is often the case with motions to dismiss, portions of the Government's Complaint would certainly benefit from more information. After all, more specifics are always better. Still, the threshold for determining whether what has been pleaded is sufficient for purpose of the Federal Rules is case-dependent.

Here, the Court finds the Government has adequately alleged its causes of action.

Whether Miller and Inclusion's statements were actually false, whether they knew or had reason to know those statements were false, and whether the Government's allegations can withstand summary judgment and/or trial remains to be seen.

The sole conclusion the Court finds today is that the Government has adequately pleaded its claims with sufficient specificity under Rule 12 and Rule 9 to put Miller and the Inclusion companies on notice of the claims against them. Furthermore, the Court holds the Government has alleged plausible causes of action that may be pursued in discovery.

## VI. ORDER

**IT IS HEREBY ORDERED:**

1.  Defendants' Motion to Dismiss (Dkt. 20) is DENIED.

DATED: July 9, 2026

_____

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 14